IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02230-PAB-SKC

TIMOTHY J. MCMANUS,

    Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,

    Defendant.

## ORDER

This matter is before the Court on Defendant Zurich American Insurance Company's Motion to Dismiss Plaintiff Timothy J. McManus's Claims for Relief With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 17]. On October 17, 2019, plaintiff responded to defendant's motion, Docket No. 22, and defendant replied on October 30, 2019. Docket No. 25.

## I. BACKGROUND[1]

This matter arises out of a disputed property insurance claim. Docket No. 5 at 2, ¶ 8. Defendant Zurich American Insurance Company issued a commercial property insurance policy ("the Policy") to Swisslog USA, Inc. ("Swisslog") for property located at 10825 East 47th Avenue, Denver, Colorado 80239 ("the Property"). *Id.* at 3, ¶¶ 9-10. The Policy provides coverage for direct physical damage to the Property, including

---

[1] These facts are taken from Plaintiff's Amended Complaint and Jury Demand [Docket No. 5] and are assumed true for purposes of this order. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

alterations to the physical appearance of or cosmetic damage to the Property caused by hail or wind. *Id.*, ¶¶ 13-15.

On or about May 8, 2017, the Property suffered direct physical loss or damage resulting from hail or wind (the "2017 storm"). *Id.* at 5, ¶ 33. The damage was promptly reported to defendant, *id.*, ¶ 39, and defendant began investigating the claim ("the Hail Claim"). *Id.* at 5-6, ¶¶ 41, 44. On or about April 18, 2018, the Property's roofing system sustained additional physical loss and damage resulting from a windstorm (the "2018 storm"). *Id.* at 7, ¶ 53. The damage resulted in functional damage to the roofing system and diminished its life span. *Id.*, ¶¶ 56-57. The damage was reported to defendant, which began an investigation into the claim ("the Wind Claim"). *Id.*, ¶¶ 58-59. Swisslog executed an assignment of the Hail Claim and the Wind Claim to plaintiff Timothy McManus, *id.*, ¶ 60,[2] the landlord of the property. Docket No. 17-4 at 1.

Defendant retained a third-party company to investigate and determine the extent of the damages from the 2017 and 2018 storms. Docket No. 5 at 5-6, ¶¶ 41, 44; *id.* at 7, ¶ 51; *id.* at 9, ¶ 78. According to plaintiff, the estimates failed to provide for all covered losses. *Id.* at 8, ¶¶ 62-69. Nevertheless, on May 7, 2018, defendant issued a cash value payment to Swisslog and plaintiff for damages sustained in the 2017 storm in an amount based on the allegedly flawed third-party estimation. *Id.* at 9, ¶ 75.[3]

---

[2] While it is unclear from the complaint, plaintiff appears to refer to the Building Lease Exit and Release Agreement [Docket No. 17-4] as the assigning document. *See* Docket No. 22 at 9 (in arguing that the assignment was valid, stating that "the release agreement, including its assignment of claim, is valid as a matter of law").

[3] It is unclear from the complaint whether defendant issued payment to plaintiff for the 2018 storm. *See generally* Docket No. 5.

Plaintiff retained two outside companies to generate a report on additional damages.  *Id.* at 11, ¶¶ 89, 92.  Each company provided plaintiff an estimate of its respective evaluation, *id.*, ¶¶ 90, 93, and plaintiff provided these estimates to defendant.  *Id.*, ¶¶ 91, 94.  Defendant denied payment for any additional damages.  *Id.*, ¶ 91.  On May 1, 2019, the parties attempted to resolve the Hail and Wind Claims in mediation, but were unsuccessful.  *Id.* at 11-12, ¶ 95.  When it became apparent that defendant would not pay the amounts plaintiff requested, plaintiff invoked the policy's appraisal provision to have the amount of loss and damaged determined in an alternative dispute resolution process.  *Id.* at 12, ¶ 97.  Defendant did not proceed with the appraisal process.  *Id.*, ¶ 98.  Plaintiff alleges that, to date, defendant has refused to pay plaintiff the amounts he is owed under the Policy.  *Id.* at 12-13, ¶¶ 102-03, 107-08.

On May 7, 2019, plaintiff sued defendant in the District Court for the City and County of Denver.  Docket No. 1 at 2, ¶ 1.  Plaintiff filed an amended complaint on August 2, 2019, Docket No. 5 at 1, and on August 6, 2019, defendant removed the case to federal court.  Docket No. 1.  Plaintiff raises four claims for relief: (1) a declaratory claim seeking to compel appraisal; (2) breach of contract; (3) bad faith breach of an insurance contract; and (4) unreasonable delay or denial of insurance benefits.  Docket No. 5 at 15-22.  On September 27, 2019, defendant filed its motion to dismiss.  Docket No. 17.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

## III.  ANALYSIS

Defendant argues that plaintiff's claims should be dismissed because plaintiff released defendant from all claims related to the Property before he commenced this lawsuit. Docket No. 17 at 8. In the alternative, defendant argues that plaintiff's declaratory judgment claim should be dismissed because plaintiff does not have the right, under the Policy, to demand an appraisal, *id.* at 10, and that plaintiff's breach of contract claim should be dismissed as untimely. *Id.* at 11.

Defendant attaches to its motion to dismiss a Building Lease Exit and Release

Agreement entered into by plaintiff and Swisslog. Docket No. 17-4.[4] The release agreement serves to terminate Swisslog's tenancy at the Property and provides a "settlement of the associated responsibilities of the conditions of the premises." *Id.* at 1. It states:

> As it relates to Zurich insurance policy claim number 5630019920 and claim number 5630014943, in consideration for each of the terms and conditions of this Agreement, . . . to the extent any additional recoveries are made against the insurer for the roof loss, Swisslog will relinquish and assign any and all rights to the recovery to [plaintiff] in exchange for a full and final release of all known and unknown obligations under the above referenced Lease.

*Id.* at 3. According to defendant, this provision does not constitute the assignment of any claims or rights under the Policy to plaintiff; instead, defendant asserts that Swisslog assigned only the right to any "additional recoveries" received by Swisslog. Docket No. 17 at 8-9. In other words, defendant contends that the provision does not assign the right to bring claims against defendant, but only to receive any additional

---

[4] Plaintiff does not object to defendant's reliance on the release agreement. *See* Docket No. 22. When considering a motion to dismiss, a court typically disregards facts supported by documents other than the complaint unless it first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir.1991). However, a court may consider documents outside of the complaint on a motion to dismiss if the documents are both central to a plaintiff's claims and referenced in the plaintiff's complaint. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). The complaint states that "Swisslog . . . executed an assignment of the Hail Claim and Wind Claim to Timothy J. McManus." Docket No. 5 at 7, ¶ 60. The release agreement purports to assign all rights to recovery in the Hail Claim and the Wind Claim to plaintiff. *See* Docket No. 17-4 at 3. The Court finds that this assignment is central to plaintiff's claims. *See* Docket No. 5 at 16, ¶¶ 134, 136 (in breach of contract claim, alleging that "Swisslog and [defendant] entered into a valid and enforceable contract for insurance" and that "Swisslog duly executed an assignment of the Hail Claim and the Wind Claim to Plaintiff."). Thus, the Court will consider the release agreement without converting defendant's motion into a motion for summary judgment.

amounts paid by defendant in the event defendant were to remit additional payments related to the insurance claims. See Docket No. 17 at 9.[5]  Plaintiff does not respond to this argument directly, but generally asserts that the release agreement constitutes a valid claim assignment. See Docket No. 22 at 8-9.

In addition, defendant argues that, not only does the release agreement not assign to plaintiff Swisslog's potential claims against defendant, the release agreement specifically releases defendant from liability with respect to these potential claims. The release agreement provides:

> [Plaintiff] . . . hereby fully and finally release[s] and forever discharges Swisslog and its respective parents, subsidiaries and affiliated companies, heirs, assigns and successors and the respective agents, servants, employees, officers, directors, shareholders, **insurers**, underwriters, reinsurers, successors, and assigns of any of them ("the Swisslog released Parties"), of and from any and all right, claim, action, remedy, lien, and/or cause of action . . . which they may have or may hereafter acquire, including for property damage . . . including any and all claims for penalties, and any and all other loss, cost, expense or damage arising out of or in any way connected to, directly or indirectly, from the Lease agreement, now known, or hereafter discovered.

Docket No. 17-4 at 3-4 (emphasis added). Defendant asserts that, because plaintiff released Swisslog "and its . . . insurers" from liability related to any and all claims arising from the lease agreement, and because the release agreement specifically references the Hail and Wind Claims, plaintiff's claims are barred. Docket No. 17 at 9. Plaintiff

---

[5] In its motion, defendant states that Swisslog could not have assigned any rights or claims to plaintiff "without violating the Polic[y's] General Conditions, which provide: 'The Insured rights and duties under this Policy may not be transferred without the Company giving written consent.'" Docket No. 17 at 9 (quoting Docket No. 17-2 at 59) (the Policy)).  However, in its reply, defendant clarifies that it "does not argue that the assignment in the Release Agreement is barred by the Policy's anti-assignment clause." Docket No. 25 at 6.  Instead, it argues that no assignment of claims occurred. See id.

6

responds that the release agreement does not apply to defendant. Docket No. 22 at 9. Specifically, plaintiff argues that "it is clear the parties [to the release agreement] did not intend to benefit [defendant] as a contemplated party of the lease agreement" because the agreement does not name defendant or demonstrate an intent to benefit defendant. *Id.* at 10.

A third-party beneficiary may enforce a contract to which it is not a party if "the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994).[6] "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Id.* With respect to exculpatory clauses, "[t]he inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 785 (Colo. 1989).

Here, defendant seeks to enforce a provision in the release agreement that defendant argues bars plaintiff's claims. The release agreement expressly states that plaintiff "forever discharges Swisslog and its . . . insurers . . . of and from any and all right, claim, action, remedy, lien, and/or cause of action . . . arising out of or in any way connected to, directly or indirectly, from the Lease agreement [sic]." Docket No. 17-4 at 3-4. While this paragraph does not expressly mention defendant, the Court finds that,

---

[6] Because the parties assume that Colorado law of contract interpretation applies, *see* Docket No. 17 at 3; Docket No. 22 at 3, the Court will do the same.

read as a whole, *see Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("Courts should read the provisions of the policy as a whole, rather than reading them in isolation."), the terms of the contract demonstrate that defendant was an intended third-party beneficiary of the contract.  In the immediately preceding paragraph, the agreement references "Zurich insurance polic[ies]," Docket No. 17-4 at 3, and refers to defendant as "the insurer."  *See id.* (stating that Swisslog assigns its right to all additional recoveries "made against the insurer" to plaintiff).  While defendant is not expressly named in the paragraph discharging Swisslog from all claims, the paragraph expressly discharges "Swisslog and its . . . insurers" from any and all claims. *Id.*  "[I]t is not necessary that the third party be specifically referred to in the agreement.  It is sufficient if the claimant is a member of the limited class that was intended to benefit from the contract."  *Smith v. TCI Commc'ns, Inc.*, 981 P.2d 690, 693 (Colo. App. 1999).  The Court finds that the clear language of the contract releases defendant from plaintiff's claims.[7]

Plaintiff asserts that, because the release agreement "specifically assigned Swisslog's insurance benefits to Plaintiff for both of its claims, it is nonsensical to assume that Swisslog and Plaintiff also released Defendant from all liability under the same agreement such that Plaintiff could not enforce payment obligations under [the

---

[7] The release agreement releases defendant from all claims arising out of the lease agreement.  *See* Docket No. 17-4 at 4.  Plaintiff does not argue that his claims do not arise out of the lease agreement.  *See* Docket No. 22.  Without the lease agreement between Swisslog and plaintiff, plaintiff would have had no reason to bring any claims arising out of the insurance contract between Swisslog and defendant.  For this reason, the Court finds that plaintiff's claims, which he attempts to bring pursuant to the Policy, arise out of the lease agreement.

8

Policy] at issue."  Docket No. 22 at 10.  However, the Court agrees with defendant that the release agreement assigned only the right to receive Swisslog's additional recoveries, not the right to bring independent claims pursuant to the policy.  *See* Docket No. 17-4 at 3 ("to the extent any additional recoveries are made against the insurer for the roof loss, Swisslog will relinquish and assign any and all rights to the recovery to [plaintiff]").  And while the "primary goal in contract interpretation is to determine and give effect to the intent of the parties," *People ex rel. Rein v. Jacobs*, 465 P.3d 1, 11 (Colo. 2020), "[w]hen a written contract is complete and free from ambiguity, [a court] will deem it to express the intent of the parties, and [the court] will enforce it according to its plain language."  *Klun v. Klun*, 442 P.3d 88, 92 (Colo. 2019).  Here, the release agreement expressly and clearly releases Swisslog and its insurers from any claims arising out of Swisslog's tenancy.  *See* Docket No. 17-4 at 3-4.  The Court must enforce the contract as written, particularly where the contract language – which was drafted by plaintiff, *see* Docket No. 22 at 10 – is straightforward and clear.  *See Simkin*, 784 P.2d at 785 (considering that "the agreement was written in simple and clear terms that were free from legal jargon" and "was not inordinately long or complicated" in finding valid exculpatory clause); *Brooks v. Timberline Tours, Inc.*, 941 F. Supp. 959, 962 (D. Colo. 1996) (noting that "the Release provisions of the Agreements were written in simple, clear terms, and are not inordinately long or complicated" in finding that the release agreement was valid).

Because the Court finds that the release provision in the release agreement discharges defendant from liability with respect to plaintiff's claims, the Court finds that

plaintiff's claims are barred under the release agreement.[8]  For this reason, the Court does not address defendant's additional arguments or plaintiff's responses thereto.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Zurich American Insurance Company's Motion to Dismiss Plaintiff Timothy J. McManus's Claims for Relief With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 17] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claims are **DISMISSED** with prejudice.  It is further

**ORDERED** that, within 14 days of the entry of this order, defendant may have its costs by filing a bill of costs with the Clerk of Court.  It is further

**ORDERED** that this case is closed.

DATED September 21, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[8] The Court finds that this bar also applies to plaintiff's appraisal claim, which "aris[es] out of or [is] in any way connected to" the lease agreement.  Docket No. 17-4 at 3-4.  The only basis plaintiff asserts for his alleged ability to demand an appraisal is that he, as the landlord, was a third-party beneficiary to the insurance contract.  Docket No. 22 at 11.  Plaintiff's legal status as a landlord exists because of the lease agreement.  Thus, the Court finds that plaintiff's appraisal claim is connected to the lease agreement and is barred by the release.  Docket No. 17-4 at 4.